| | |
|---|---|
| From: | LFGNotifications@LFG.com |
| Sent: | Monday, July 19, 2021 3:51:46 PM |
| To: | MAIL@BUCHANANDISABILITY.COM; |
| CC: | |
| BCC: | |
| Subject: | [Send Secure]Dignity Health Claim No. 3840737 Kimberly Shaw |
| Attachments: | rt8ayo5bgagvvrg0gun6_10860839.pdf; |

---

This notification contains important information regarding a claim with Lincoln Financial Group company. THIS IS AN AUTOMATED EMAIL. PLEASE DO NOT RESPOND. You may use the contact information in the attached letter to respond if needed.

EXHIBIT

2

Lincoln Financial Group®

Lincoln Life Assurance Company of Boston
Disability and Life Claims Appeal
PO Box 2578
Omaha, NE 68172-9688
Phone No.: (888) 437-7611
Secure Fax No.: (603) 422-7909

July 19, 2021

Hudson T. Ellis
Eric Buchanan & Associates, Pllc
P.O. BOX 11208
CHATTANOOGA, TN 37401

RE: Long Term Disability (LTD) Benefits
Dignity Health
Claim #: 3840737
Claimant: Kimberly Shaw

Dear Hudson Ellis:

We reviewed your appeal request for your client's Long Term Disability ("LTD") benefits and maintained the decision to deny benefits beyond December 7, 2020.

**<u>Initial Claim Decision</u>**

Kimberly Shaw submitted a claim for her absence from work as of April 21, 2017 due to symptoms associated with fibromyalgia. LTD benefits were approved from October 18, 2017 through December 7, 2020. Benefits beyond December 7, 2020 were denied as the evaluation concluded she was no longer disabled as defined by the Policy.

The basis for the decision was outlined in a letter sent to you dated December 8, 2020. You were provided an opportunity to request an appeal review of the denial, stating the reasons why you felt this claim should not have been denied, and submit additional information to support the claim. Specifically, you were advised to submit the following information: *A copy of all treatment notes; procedure reports; diagnostic test results including X-ray, MRI, and CT scan reports; consulting physician reports; pharmacy records; emergency room and urgent care center notes; hospital discharge summaries, valid functional capacity evaluations; along with any and all other medical records from December 1, 2020, forward, from any and all treating providers. Documentation of additional and specific restrictions and limitations, including how they prevent Mrs. Shaw from performing the essential duties of the identified alternate occupation(s) and the medical documentation to support them. You may submit any medical information pertaining to Mrs. Shaw's SSD award, including independent medical examinations, physician reports, test results, and any other records in your SSD file. You should also submit any other information which you feel would support your claim beyond December 7, 2020.*

***<u>Appeal</u>***

On April 14, 2021 we received your request for an appeal review of Ms. Shaw's disability benefits. In this letter you stated the information submitted in support of Ms. Shaw's claim along with the information already contain in the file, should be sufficient to establish her entitlement to benefits. The functional capacity evaluation conducted by Benchmark dated February 23, 2021 found that Ms. Shaw lacks the functional capacity to perform sustained work at any exertional level. Dr. William Craig (rheumatology) opined that Ms. Shaw is limited to 4-6 hours of sitting per day, 1 hour of standing and limited use of her hands for fine manipulation, typing, writing, and grasping small objects. She would require 15-20 minute breaks for every 1-2 hours of work and she suffers from daily lapses in concentration and memory. Dr. Craig opined she would be absent for 4 or more days per month.

In support of this claim, information received as part of the appeal request to include, but are not limited to:

- Medical records from Dr. Milan Patel dated May 23, 2017 to August 1, 2017
- Medical records from Dr. Aaron Morse dated May 20, 2017 to July 10, 2017
- Medical records from Dr. Charles Crump dated December 28, 2017 to January 6, 2021
- Medical records from Dr. William Craig dated June 12, 2018 to November 10, 2020
- Benchmark Physical Therapy Functional Capacity Evaluation dated February 23, 2021
- Medical Opinion Form signed by W. David Craig Scenic City Rheumatology dated January 28, 2021
- Medical records from Magdalena Santos, NP-C dated March 28, 2018
- Medical records from Dominican Medical Group dated July 20, 2016 to December 28, 2016
- Restrictions form signed by Ginger Mullins, PA-C dated February 15, 2018
- Prudential Physicians Statement Dr. Charles Crump dated April 25, 2018 and claim forms
- Social Security Administration records

**<u>Appeal Evaluation</u>**

On November 10, 2020 during the claim evaluation for ongoing benefits, Ms. Shaw attended an Independent Medical Evaluation. This IME was conducted by Dr. Paul L. Mefford, board certified in physical medicine and rehabilitation, subspecialty certification in pain medicine. Dr. Mefford's assessment and conclusion were outlined as follows:

*In regard to the numerous spinal and peripheral joint complications, her exam was consistent with the normal wear-and-tear degenerative process of aging. She has been diagnosed with Fibromyalgia. This is always a difficult diagnosis to predict compliance with work duties. In my experience, people experiencing Fibromyalgia often tend to have high anxiety component to their complaints and the anxiety is often a defining factor on why people feel like they cannot work.*

*They tend to fear they will hurt themselves or have pain with any activity. Mrs. Shaw complained of anxiety as a common complaint she has daily. With Fibromyalgia, it is often best to stay active and perform moderate exercise.*

*I did notice on exam that she appeared to have mild labored breathing at rest that only marginally worsened with activities like getting up and moving from the seat to the exam table. She appeared to have shortness of breath with simple rest, but she could communicate freely and without issues. She was able to ambulate down the hall. Her Oxygen saturation was 98% on room air, which is completely normal and does not indicate any distress. She mentioned her pulmonary function tests were "normal" for asthmatics. This is corroborated in the notes. Her pulmonary records showed that she had essentially normal pulmonary function.*

*Mrs. Shaw also seems grossly deconditioned. We spoke about this and she stated that any reconditioning activities caused her increased pain and shortness of breath in the past, so she avoids any of these activities. She may have such significant deconditioning that any resumption of exercise may cause normal pain complaints with muscles that are sore during the reconditioning process.*

*In regard to her Fibromyalgia, Mrs. Shaw can certainly do at least Light Duty (possibly even Moderate) as long as she is able to take breaks and rest if needed.*

*From a Pulmonary standpoint, she has shortness of breath while seated, but her records show normal pulmonary function. As long as she maintains her asthma treatments, I do not see why she cannot do at least Light to Moderate duty in this regard. She does not appear to be struggling to oxygenate in a normal setting on room air.*

*As far as her spine and peripheral joints are concerned, I did not detect any reason to limit her work capabilities. I do not detect any significant side-effects from any of these medications. Mrs. Shaw complained that she had trouble thinking and her memory was poor. We discussed any medications, including the possibility that Gabapentin was causing some memory issues, but she assured me she had been on Gabapentin long before she noticed any cognitive issues. During the interview and exam today, I did not notice any cognitive impairment. Her recall and memory appeared to be quite strong and exact. She did not have any trouble communicating her history and symptoms. She did have a plethora of complaints that encapsulated her entire body, but none of these would be related to any of the medications she is taking.*

The policy under which Ms. Shaw is covered has a 24-month own occupation period for which benefits may be payable as long as she continued to meet the definition of disability. As long-term disability benefits were approved and paid for more 24 months it must be determined that she remains disabled from Any occupation.

A vocational review and transferrable skills analysis was conducted based on her prior work history, educational background, and/or life experience and capacity within the restrictions and limitations outlined which notes Ms. Shaw can do at least light work and possibly moderate work as long as she is able to take breaks as needed. The analysis showed through her work, education, training and/or life experience she demonstrated the following skills:

***Skills & Abilities:***

*Applying technical knowledge, common sense, and special medical skills to care for or treat sick or handicapped people; using eyes, hands, and fingers skillfully; adapting quickly to emergency situations; instructing, planning, and directing work of others; keeping accurate records; and distinguishing shapes, forms, and colors.*

*Applying logic and management skills to plan, direct, or supervise specialized social service programs; analyzing materials and interpreting wide variety of subject matter; making decisions using judgment, experience, knowledge of legal requirements, and other known facts; speaking and writing effectively to influence actions of others; and planning and directing activities of others. Planning own or others' work program; using reasoning and judgment to perform various clerical functions; using hand and fingers in typing, taking shorthand or dictation, and recording data; obtaining and safeguarding confidential information on individuals; proofing copy to correct errors in spelling, grammar, and punctuation; speaking distinctly when dealing with people in various situations; and making decision involving company policy.*

The Transferable Skills Analysis identified occupations are within Employee's physical abilities and within their identified skill level: Director, Outpatient Services, $8415, Health Services Managers, $8415, Director, Volunteer Services, $5595. As alternative occupations were identified within her restrictions and limitations, LTD benefits were denied.

As part of this appeal review this file was reviewed by an independent physician, William Barreto, M.D., board certified in physical medicine and rehabilitation and pain management. Dr. Barreto indicated Kimberley Shaw is a 54-year-old female who ceased work on April 21, 2017 reportedly, due to fibromyalgia. Ms. Shaw has comorbidities of polyarthropathy (M13.0), depression with anxiety (F41.8), fatigue (R53.83), moderate persistent asthma with status asthmaticus (J45.42), hypothyroidism, unspecified type, vitamin D deficiency (E55.9), type II diabetes mellitus with other specified complication (E11.69), obesity.

Dr. Barreto indicated "*despite long-standing complaints related to fibromyalgia and fatigue, there are no specific objective findings related to non-rheumatological conditions that would support restrictions and limitations.*

*The severity and scope of the claimants reported complaints are consistent with the medical conditions, however, there is indication of some deconditioning. There is no indication that the claimant has undergone any recent active treatment and continues with active home exercises. Aerobic and muscle strengthening exercises are the most effective way of reducing pain and improving global well-being in people with fibromyalgia, and that stretching and aerobic exercises increase health-related quality of life. In addition, combined exercise produces the biggest beneficial effect on symptoms of depression. Exercise therapy seems to be an effective component of treatment, yielding improvement in pain and other symptoms, as well as decreasing the burden of fibromyalgia on the quality of life. Exercise is generally acceptable by individuals with fibromyalgia and was found to improve the ability to do daily activities and the quality of life and to decrease tiredness and pain*.

Dr. Barreto noted in regard to the February 23, 2021 Functional Capacity Evaluation, "*Given the length of disability, deconditioning, obesity, and multiple other comorbidities, I do not agree with the claimant's current FCE results. There is no indication that the claimant has undergone a recent conditioning program such as physical therapy, work conditioning, or work hardening.*

*There is no indication of consistent exercise, aquatic therapy, yoga, acupuncture, etc. to address ongoing pain complaints. Claimants with fibromyalgia are encouraged to stay consistently active."*

Dr. Barreto attempted to contact Dr. William Craig and was advised by Dr. Craig's assistance that he does not do peer to peer calls and that questions would need to be faxed to him. Questions were faxed to Dr. Craig per his request.

As part of this appeal review this file was reviewed by an independent physician, N. Nichole Barry, M.D., board certified in internal medicine and rheumatology. Dr. Barry indicated, "*Based on the records provided, the patient's rheumatologic diagnosis is fibromyalgia. No findings on examination imaging or lab testing indicate the presence of an inflammatory or autoimmune condition. Fibromyalgia, or central sensitization syndrome, is a pain syndrome, characterized by hyperalgesia to painful stimuli. It is now referred to as central sensitization syndrome, to emphasize the cause as being related to issues with amplified pain receptors of the central nervous system. It is not associated with a pathological process and is not progressive. The optimal treatment, as recommended by the American College of Rheumatology, is focused around exercise and activity, not by limiting it, and therefore, does not support any need for functional limitations. In fact, the deconditioned state that results from limiting activity will lead to a worsening of the pain and fatigue associated with fibromyalgia. Basically, the less the patient do, the greater their symptoms become. Therefore, based on the diagnosis of fibromyalgia, functional limitations are not supported.*

Dr. Barry noted in regard to the February 23, 2021 Functional Capacity Evaluation, "*The FCE noted that the claimant was limited based purely on self-restriction, due to pain and fatigue, which, in part may be due to fibromyalgia, and some due to her other conditions such as sleep apnea, depression, anxiety, lumbar radiculopathy, peripheral neuropathy. The component due to fibromyalgia does not support a need for limitations. The pain is centrally amplified. It was also noted in the IME that she is severely deconditioned as well. It is reasonable that she will experience discomfort, both in muscle pain and fatigue, as she increases her level of exertion. This will improve over time, as will the pain and fatigue associated with fibromyalgia. Patients with fibromyalgia are very reluctant to increase activity, due to fear that their fatigue and pain will worsen, yet when they start to exercise regularly, the opposite happens."*

As part of this appeal review you were afforded the opportunity to review Dr. Barreto's and Dr. Barry's clinical reports prior to an appeal determination being rendered. In response we received your written response and a response from Dr. William Craig, who noted "*I do not agree nor disagree! See my medical opinion from dated 1/28/21 and office notes."* Your office resubmitted Dr. Craig's January 28, 2021 Medical Opinion Form. This information was referred back to both reviewing providers for an addendum.

The addendums are as follows:

Dr. Barry, "*Additional records include a statement from provider Dr. Craig that he "does not agree or disagree" with the limitations given by reviewers. He refers to medical form filled out on 1-2021, stating she can sit for 4-6 hours, and stand or walk for 1 hour in an 8 hour day, due to fibromyalgia and osteoarthritis, and can carry up to 10 pounds less than 1/3 of the day.*

*No additional clinical information pertaining to her rheumatological diagnosis was provided. The provider gave his medical opinion regarding her functional level, based on her diagnosis of fibromyalgia and*

*osteoarthritis. A provider's opinion is not clinical information. It's opinion. Clinical information would be findings on examination/imaging/lab tests, response to treatment etc. not opinion.*

Dr. Barreto, "*The severity and scope of the claimants reported complaints are consistent with the medical conditions, however, there is indication of some deconditioning. There is no indication that the claimant has undergone any recent active treatment and continues with active home exercises. Aerobic and muscle strengthening exercises are the most effective way of reducing pain and improving global well-being in people with fibromyalgia, and that stretching and aerobic exercises increase health-related quality of life. In addition, combined exercise produces the biggest beneficial effect on symptoms of depression. Exercise therapy seems to be an effective component of treatment, yielding improvement in pain and other symptoms, as well as decreasing the burden of fibromyalgia on the quality of life. Exercise is generally acceptable by individuals with fibromyalgia and was found to improve the ability to do daily activities and the quality of life and to decrease tiredness and pain. Despite long-standing complaints related to fibromyalgia and fatigue, there are no specific objective findings related to non-rheumatological conditions that would support restrictions and limitations.*"

Our role in reviewing this file is to determine whether her medical conditions and the medical documentation contained in her file supports she is unable to perform the material and substantial duties of Any occupation for which she is qualified based her education, training and physical capacities. We are not required to ensure the availability of this occupation or that she returns to active employment with her former employer in the same or different position.

It is important to clarify that the existence of a medical condition/diagnosis in and of itself does not equate to eligibility for long term disability benefits. The focus of our assessment is not whether or not a condition exists; but rather whether or not impairment exists that would preclude her from performing the duties of Any occupation. We take into consideration medical and vocational factors to determine if impairment is supported.

The medical evidence received and reviewed supports full time work capacity and that she would not be precluded from the sedentary occupations of outpatient services director and director volunteer services. As such, Kimberly Shaw no longer satisfy the definition of Disability under the LTD Policy.

**<u>Conclusion</u>**

We conducted a thorough and independent review of this entire claim. We acknowledge that she continued to experience some symptoms associated with her medical conditions beyond December 7, 2020. However, the available information does not contain exam findings, diagnostic test results or other medical documentation supporting her symptoms from a physical or psychological condition were of a severity, that they resulted in restrictions or limitations rendering her unable to perform the duties of Any occupation.

After a complete evaluation of the claim, including all information submitted with the appeal, all medical reviews completed on the file, and taking into consideration the opinions of her providers as set forth in their written record, we determined the clinical evidence does not support she is precluded from performing Any Occupation continuously beyond December 7, 2020. As such, benefits continue to be denied.

This claim may be reviewed further by the California Dept. of Insurance Consumer Communications Bureau. Their address is 300 South Spring St., South Tower, Los Angeles, CA 90013 and the Consumer Hotline is 1-800-927-4357 or 213-897-8921.

If you had planned to provide additional information to support your claim but have been unable to do so in light of the COVID -19 emergency, please know that you may submit information for up to 90 days after the end of the California statewide State of Emergency.

This claim decision reflects an evaluation of the claim facts and Policy provisions.

**Policy Provisions**

To continue receiving benefits, you must satisfy the requirements of all Policy provisions that state, in part:

> *"**Disability**" or "**Disabled**" means:*
>
> *i. that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform with reasonable continuity the Substantial and Material Acts necessary to pursue his Own Occupation in the usual and customary way; and*
>
> *ii. thereafter, the Covered Person is unable to perform, with reasonable continuity, the Substantial and Material Acts of any occupation, meaning that as a result of sickness or injury the Covered Person is not able to engage with reasonable continuity in any occupation in which he could reasonably be expected to perform satisfactorily in light of his age, education, training, experience, station in life, and physical and mental capacity."*

**"Substantial and Material Acts"** means acts that are normally required for the performance of the Covered Person's Own Occupation and cannot be reasonably omitted or modified.

**"Proof"** means written proof covering the occurrence, the character and the extent of the loss for which the claim is made.

Under the Employee Retirement Income Security Act (ERISA) appeal guidelines, you were entitled to appeal the decision made by Lincoln Financial Group and to submit any additional information you wished to be considered as part of the appeal. Lincoln has conducted a full and fair review of your appeal and accompanying materials and has concluded that the denial of benefits will be maintained.

At this time, her administrative right to review has been exhausted; no further review will be conducted by Lincoln and this claim will remain closed. You may request to receive, free of charge, copies of all documents relevant to your claim. You have the right to bring a civil action under section 502(a) of ERISA following an adverse benefit determination on review.

***Legal Actions***

*No action at law or in equity shall be brought to recover on this policy prior to the expiration of 60 days after written proof of loss has been furnished in accordance with the requirements of this policy. No such action shall be brought after the expiration of three years after the time written proof of loss is required to be furnished.*

This policy is subject to ERISA, and you may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact the local U.S. Department of Labor Office or state insurance regulatory agency. In addition, once all required reviews of this claim have been completed, you have the right to bring a civil action under applicable law. The employer's policy has a contractual limitations period of three years which means that a lawsuit must be brought within three years after the date written proof of claim or proof of continued disability was required. The date on which the contractual limitations period expires for this claim is March 7, 2024.

This information is provided for purposes of this claim only, as the time proof of claim is required may differ based on claim specifics and applicable policy language.

Nothing in this letter should be construed as a waiver of any Lincoln Financial Group rights and defenses under the above captioned Policy, and all of these rights and defenses are reserved to the Company, whether or not they are specifically mentioned herein.

In our review of your claim, Lincoln Financial Group did fully consider the Social Security Administration's ruling to approve Social Security Disability Income benefits. It should be noted, however, that while we fully considered the Social Security Administration's ruling, the decision by the Social Security Administration does not determine entitlement to benefits under the terms and conditions of the Dignity Health Group Disability Income Policy. Moreover, Lincoln Financial Group has obtained and considered an Independent Medicine Examination by Dr. Paul Mefford, (physical medicine and rehabilitation and pain medicine) and two additional specialty medical reviews by Dr. N. Nichole Barry (internal medicine and rheumatology) and Dr. William Barreto (physical medicine and rehabilitation and pain medicine) and the vocational review that were not considered by the Social Security Administration in its determination process.

Decisions made by Lincoln Financial Group are based on the provisions outlined in the Dignity Health Policy. These provisions are not contingent on decisions made by either the Social Security Administration or other disability-determining entities. No internal rules, guidelines, protocols, standard or other similar criteria were relied upon in rendering the claim.

If you require language translation assistance, please contact Lincoln to initiate a service provided free of charge to assist with understanding your claim and appeal rights.

如果您需要翻译方面的帮助，请联系我，我会免费为您服务以便了解您的要求和诉求。

Shá ata' hane'go shíká a'doowoł nínízingo saad hosíníłįį' dóó ná'ookąąh nííní'ąągo naaltsoos nííníłtsoozígíí hazho'ó bik'idi'deeshtįįł nínízingo doo bąąh ílínígóó níká a'doowoł éí biniiyé shił hodíílnih áko ákwe'égi níká adeeshwoł.

Si necesita traducción, contácteme para iniciar un servicio gratuito a fin de ayudarle a entender sus derechos de reclamo y apelación.

Kung nangangailangan ka ng tulong sa translation, mangyaring makipag-ugnayan sa akin upang gumamit ng serbisyong ibinigay nang walang bayad upang matulungan kang maunawaan ang iyong mga karapatan sa paghahabol at pag-aapela.

If you have any questions regarding this matter, please contact me.

Sincerely,

Courtney Grygiel
Appeals Consultant
Phone No.: (888) 437-7611 Ext. 13301
Secure Fax No.: (603) 422-7909